IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:19-cr-00389-LMM-CCB-15 |
| JOAQUIN FLORES, JR., | : | |
| | : | |
| Defendant. | : | |

# **ORDER**

Defendant Joaquin Flores, Jr., is charged with conspiracy to distribute methamphetamine and possession of methamphetamine with intent to distribute. Dkt. No. [231]. The matter is before the Court on the Magistrate Judge's Order and Report and Recommendation, Dkt. No. [751], in which the Magistrate Judge denied Defendant Joaquin Flores, Jr.'s motion for a bill of particulars, Dkt. No. [599], and recommended denial of his motions to suppress evidence from the search of his home, Dkt. Nos. [600, 701]; to suppress evidence seized from a cell phone taken during the search of his home, Dkt. Nos. [602, 704]; to suppress evidence from a tracking device, Dkt. Nos. [603, 703]; and to suppress evidence from pole-camera surveillance, Dkt. Nos. [623, 702].[1]

---

[1] The motion to suppress evidence from pole-camera surveillance pertains only to information that recorded events near 6529 Norcross Tucker

1

Defendant has filed objections to each of the Magistrate Judge's recommendations and requests reconsideration of the Order denying the motion for a bill of particulars. Dkt. No. [766]. After due consideration, the Court enters the following Order.

I.     **MOTION FOR A BILL OF PARTICULARS**

The Court first considers Defendant's contention that the Court should overrule the Magistrate Judge's Order denying his motion for a bill of particulars. Defendant asserts that "a bill of particulars is appropriate for the reasons described in his initial motion and urges the Court to overrule the magistrate judge's order to the contrary." Dkt. No. [766] at 25.

The Court finds no basis for overruling the Order. A district judge may reconsider any pretrial order entered by a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Under this Court's Local Rules, every request for relief filed in this Court must be accompanied by a citation to supporting authority. LR 7.1(A)(1), NDGa; LCrR 12.1(B), NDGa (adopting LR 7.1, NDGa).

In seeking reconsideration of the Magistrate Judge's Order on the motion for a bill of particulars, Defendant does not cite any supporting authority, nor

---

Road. Dkt. Nos. [623, 702]. The portion of the motion that sought suppression of information obtained from a pole camera located near 3544 Old Chamblee Tucker Road was deemed moot after the Government represented that it does not intend to use any footage from that camera at trial. Dkt. No. [675]; Dkt. No. [676] at 7-8; Dkt. No. [751] at 45 n.13.

does he make any attempt to show that the Magistrate Judge's Order is clearly erroneous or contrary to law. See Dkt. No. [766] at 25. Moreover, to ask the Court to review every argument de novo based simply on the arguments presented to the Magistrate Judge would undermine the purpose of the magistrate-judge system, which was created to help alleviate the workload of the district judges. In addition, the Court has reviewed the Magistrate Judge's Order on this issue and finds that it is not clearly erroneous or contrary to law.

Accordingly, the Court will not overrule the Order denying the motion for a bill of particulars.

## II.   OBJECTIONS TO REPORT AND RECOMMENDATION

### A.   LEGAL STANDARD

Under 28 U.S.C. § 636, the Court reviews a Magistrate Judge's Report and Recommendation for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. A district judge may reconsider a pretrial order entered by a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

The Court will consider Defendant's evidentiary motions in chronological order.

### B.   MOTION TO SUPPRESS EVIDENCE FROM POLE-CAMERA SURVEILLANCE

The first law enforcement activity Defendant challenges is the use of a pole camera for surveillance. See Dkt. No. [766] at 22-25. In the spring of 2019, the Drug Enforcement Agency ("DEA") installed a camera in a gray box on a power pole inside an apartment complex, at 6529 South Norcross Tucker Road, where an alleged stash house was located. Dkt. No. [672] at 90, 96, 106, 109, 113. [2,3] The camera provided a plain exterior view only—no infrared, night vision, or sound—and the alleged stash house itself was not visible from where the camera was positioned. Id. at 98-100, 128-29, 133, 135.

The camera ran continuously for the 44 days it was operational, but it was not continuously monitored. Id. at 96-97, 110, 113-14. An agent could watch a live feed from a computer or smartphone and could zoom in and out or pan left, right, up, and down, but could not go back and zoom or pan from the recording—the camera recorded only the live view. Id. at 96-98, 112, 116-18. At the most zoomed-out setting, the camera showed several apartment buildings and an adjoining parking lot, and at the most zoomed-in setting, the camera could focus on, for example, a breezeway in one of the buildings. Id. at 92-95. On in-between settings, the camera could focus on things like specific cars in the parking lot or people moving about outside of the buildings. Id. at 93-95.

---

[2] The facts recited in this section are distilled from the facts recited in the Report and Recommendation and are not disputed.

[3] Where original page numbering differs from the numbering assigned by the Court's electronic filing system, the Court cites the page numbers generated by its electronic filing system.

Defendant moves to suppress information obtained from the pole camera on grounds that the installation of a pole camera to surveil an area continuously for weeks or months constitutes a search within the meaning of the Fourth Amendment. He contends that a warrant was therefore required, and he objects to the Magistrate Judge's recommendation that his motion to suppress the pole-camera evidence be denied. Dkt. Nos. [623, 702]; Dkt. No. [766] at 22-25.

The Court has carefully conducted a de novo review of Defendant's arguments, both in his original motion and in his objections to the Report and Recommendation, and concludes, for the same reasons that were aptly articulated by the Magistrate Judge, that the motion is due to be denied. See Dkt. No. [751] at 45-55. The Court therefore overrules Defendant's objections to that portion of the Magistrate Judge's Report and Recommendation.

### C.  MOTION TO SUPPRESS EVIDENCE FROM TRACKING DEVICE

The second law enforcement activity Defendant challenges is the use of a tracking device. Dkt. Nos. [603, 703]; see also Dkt. No. [766] at 21-22. On June 13, 2019, a Magistrate Judge in the Northern District of Georgia issued a warrant to install, use, and monitor a tracking device on a black 2004 Chevrolet Avalanche ("Avalanche") registered to Defendant. Dkt. No. [716-2]. In the affidavit submitted in support of the warrant application, Special Agent Bryan Tice alleged that he had reason to believe that the Avalanche "has been, is being,

and will continue to be used to conduct illegal activity . . . including transporting drugs," id. ¶ 25, based on the following facts:

- On May 13, 2019, approximately one month before SA Tice applied for the tracker warrant, agents observed a drug transaction at a "stash apartment" at the Paramount Apartments, after learning about the plans for the transaction from a wiretap. Id. ¶¶ 10-12. That transaction did not involve Defendant or the Avalanche. Id.

- The next day, on May 14, 2019, agents learned through a wiretap that there would be another drug delivery to the same apartment, but by a different courier. Id. ¶¶ 13-19. The expected quantity to be delivered was ten kilograms. Id. ¶ 17. Someone else was supposed to arrive to pick up the money that was the proceeds of the previous transaction. Id. ¶¶ 13, 17.

- Later that day, at approximately 6:22 pm, agents observed Gordo, a target of the investigation, leave the apartment and briefly meet with Chivo, another target who had arrived in a gray Durango. Id. ¶ 20. Gordo then walked back to the apartment. Id.

- The Avalanche then arrived and also parked in front of the apartment building. Id. ¶ 20. Then, at approximately 6:34, agents observed what they believed to be a drug deal inside the Avalanche. Id. ¶ 21. The Avalanche then left in tandem with the Durango driven by Chivo. Id.

- Agents later intercepted a communication which they interpreted to mean that the expected drug deal had occurred. Id. ¶ 23.

6

- Although agents were not able to identify the driver of the Avalanche, id. at 12 n.1, the Durango and the Avalanche were both registered to Defendant. Id. ¶ 22.

Defendant argues that there was no probable cause to support the warrant because the affidavit proffered testimony only as to a single drug transaction involving the Avalanche, which was insufficient to show that the vehicle's involvement in the drug trade was ongoing. Dkt. No. [766] at 21-22. He contends that the Magistrate Judge therefore should have recommended granting the motion to suppress evidence gleaned from the tracker under United States v. Hython, 443 F.3d 480, 486 (6th Cir. 2006). Id.

The Court does not agree. As the Magistrate Judge observed, the question for the judge reviewing the search-warrant application was whether there was a "fair probability" that contraband or evidence of a crime would be found by installing a tracking device. Dkt. No. [751] at 42 (quoting United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000)). Included in that analysis is whether the information supporting the search-warrant application is timely, such that probable cause exists at the time the search warrant is issued. United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). Each case is reviewed on its unique facts, and the case-by-case determination may include consideration of things like "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the

[information] sought, and nature and function of the premises to be searched." Id.

To Defendant's point, the court held in Hython that there was no probable cause for issuing the warrant where the warrant was sought based only on a single, undated purchase of a baggie of crack cocaine without any additional police investigation to support the contention that the residence was a drug den. Hython, 443 F.3d at 486. The court also explained, however, that "[t]he passage of time becomes less significant when [there is evidence that] the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." Id. at 485.

The facts of this case are materially different from those in Hython. In the present case, there were two drug purchases described in the search-warrant affidavit (albeit only one that involved the Avalanche), and they were not undated; instead, the affidavit described two drug purchases that had taken place only one month prior. Dkt. No. [716-2] ¶¶ 10-21. There was evidence that the purchase involving the Avalanche was expected to involve 10 kilograms of drugs and $5,000, amounts far closer to the "drug den" end of the continuum than the $150 baggie purchase in Hython. Id. ¶ 17. SA Tice also testified that the DEA learned of the drug deals as a result of wiretaps of phones of suspected international drug traffickers, which further suggests an ongoing criminal conspiracy. Id. ¶¶ 9-19. The fact that the Avalanche and the Durango were both

8

registered to Defendant additionally indicates more than a casual, transient involvement in the conspiracy. See id. ¶ 22.

For these reasons, the Court concludes that even though the information contained in the tracker-warrant affidavit was a month old, the circumstances were such that there remained probable cause that contraband or evidence of a crime would be found by installing the tracking device in the Avalanche. Defendant's objections to the Magistrate Judge's recommendation that the motion to suppress evidence derived from the tracking device will therefore be overruled.

### D. MOTIONS TO SUPPRESS STATEMENTS, EVIDENCE FROM SEARCH OF HOME, AND EVIDENCE SEIZED FROM PHONE

#### 1. Background

Before dawn on August 13, 2020, the United States Marshals Service, in cooperation with the DEA, executed an arrest warrant for Defendant at his home in Douglasville, Georgia. Dkt. No. [672] at 47-48; Dkt. No. [676] at 10, 19. Special Agent Danae Busby[4] and Task Force Officer Jose Cadena participated in the operation. Dkt. No. [672] at 46-47; Dkt. No. [676] at 19. The U.S. Marshals opened the door and conducted a security sweep of the house while SA Busby and TFO Cadena waited outside. Dkt. No. [672] at 48-50; Dkt. No. [676] at 21.

---

[4] SA Busby now works with the United States Fish and Wildlife Service. Dkt. No. [672] at 46-47.

The Marshals brought Defendant out of the house. Dkt. No. [672] at 50; Dkt. No. [676] at 12, 19-20. He was dropped onto the grass, handcuffed in the front, and then placed into the front passenger seat of SA Busby's vehicle, where SA Busby questioned him. Dkt. No. [676] at 12-14, 20, 25, 28, 31.

Defendant seeks to suppress his statements and the evidence collected from the searches of his home and phone, arguing that he did not receive Miranda[5] warnings or consent to the search of his home or cell phone; that even if he had, his statements and consents to search were not voluntary; and that a warrant obtained to search the phone was facially invalid. Dkt. Nos. [600, 602, 701, 704]. The Government avers that SA Busby properly provided Defendant Miranda warnings prior to questioning him, that Defendant waived his Miranda rights and voluntarily agreed to answer questions, and that he voluntarily consented to searches of his home and cell phone. The Magistrate Judge recommended denying Defendant's motions. Dkt. No. [751] at 12-40.

### 2. Suppression of Statements

Under the Fifth Amendment to the United States Constitution, courts must "exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." United States v. Luna-Encinas, 603 F.3d 876, 880 (11th Cir. 2010). "The Government must prove by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his Miranda rights." United States v. Bernal-

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

Benitez, 594 F.3d 1303, 1318 (11th Cir. 2010); accord Colorado v. Connelly, 479 U.S. 157, 168 (1986). "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." United States v. Watkins, 10 F.4th 1179, 1184-85 (11th Cir. 2021) (en banc).

### a.      Miranda Warnings

Defendant argues that the Magistrate Judge's determination that the Government's witnesses credibly testified that Defendant was given Miranda warnings prior to questioning relies on an inaccurate summary of the testimony. Dkt. No. [766] at 2-5. Specifically, he contends that the evidence does not support the Magistrate Judge's explanation that he found the witnesses credible because they remembered the "specific facts and circumstances surrounding exactly how [SA Busby] informed Defendant of his rights." Dkt. No. [766] at 2.

The Court has carefully reviewed the transcripts and agrees with the Magistrate Judge that the Government witnesses are credible. SA Busby testified that she began her conversation with Defendant by reading his Miranda rights to him from a DEA 13A card and that he responded by indicating that he understood, waiving his rights, and stating that he was willing to answer questions. Dkt. No. [672] at 52, 75-76. She described him as sitting in the front passenger seat of a law enforcement vehicle with his hands handcuffed in front, Dkt. No. [672] at 52, and seeming offended that the officers asked if he spoke English, Dkt. No. [672] at 51, and she stated that she began interviewing him right after he got in the van, "[f]ollowing his Miranda," Dkt. No. [672] at 78.

11

Officer Cadena remembered the interview similarly: he also testified that the interview took place in SA Busby's vehicle; that Defendant sat in the passenger seat; that the officers apparently offended Defendant by asking him at the beginning of the interview whether he spoke English; that after the officers determined that Defendant was an English-speaker, SA Busby read <u>Miranda</u> warnings from a card; that Defendant agreed to speak with the agents; and that he did not give any indication that he did not understand his rights. Dkt. No. [676] at 20-21, 28. While Defendant correctly notes that the officers did not recall exactly how Defendant related his waiver of his <u>Miranda</u> rights and agreement to speak with the officers, the Court finds indicia of credibility in the fact that their testimony was consistent and contained some detail but was not overlapping or overly detailed in a way that may have suggested it was contrived: in other words, when the officer remembered an answer to a question, an answer was provided, and there is no indication that either officer attempted to artificially corroborate the other's testimony. As the Magistrate Judge pointed out, it is also worth noting that the testimony was consistent even though the officers testified several weeks apart and TFO Cadena confirmed that he did not speak to SA Busby about the case prior to her testimony or talk to her about his own testimony. Dkt. No. [676] at 27.

     For these reasons, the undersigned overrules Defendant's objections to the Magistrate Judge's finding that the testimony shows by a preponderance of the evidence that Defendant knowingly and intelligently waived his <u>Miranda</u> rights.

### b.     Voluntariness of Statements

Defendant also takes issue with the Magistrate Judge's determination that he voluntarily answered the officers' questions. Dkt. No. [766] at 5-6. Even where there is no Miranda violation, the Court must still "determine that any confessions or incriminatory statements made by a defendant were voluntary" before those statements can be admitted at trial. United States v. Lazarus, 552 F. App'x 892, 895 (11th Cir. 2014). In doing so, the Court considers whether, based on the totality of the circumstances, the statements were "the product of an essentially free and unconstrained choice." Hubbard v. Haley, 317 F.3d 1245, 1252 (11th Cir. 2003) (internal quotation marks omitted). Factors considered include "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." Id. at 1253; accord United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."); United States v. Patterson, No. 1:06-CR500-1-TWT, 2007 WL 2331080, at *4 (N.D. Ga. Aug. 10, 2007) (noting that statements have been found involuntary when the circumstances that produced them present "a substantial element of coercive police conduct" (internal quotation marks omitted)).

13

Defendant contends that his statements were not voluntary because he had woken up to find at least five armed law enforcement officers in his home more than a year after any alleged criminal conduct; he was taken outside, laid on the ground, put in handcuffs, and then placed in SA Busby's vehicle for the interview; he was concerned about what was happening to his 76-year-old mother, who lived with him; he did not understand what was happening and was desperate for information; and SA Busby agreed that she "[p]ossibly" told Defendant that he "needed to talk to them and he needed to tell the truth." Dkt. No. [766] at 5-6 (citing Dkt. No. [672] at 77; Dkt. No. [676] at 11-14).

For the reasons stated in the Report and Recommendation, the Court finds that Defendant's statements were voluntarily given. See Dkt. No. [751] at 19-22. The Court is particularly persuaded by the facts that Defendant perceived the interview as only about 10 to 15 minutes long, Dkt. No. [676] at 17; SA Busby testified that she never made any threats or promises, Dkt. No. [672] at 53; no one brandished a gun during the interview, id. at 58; and Defendant was calm throughout the conversation, id. at 53. The Court also notes that it was Defendant's roommate, not the officers, who woke Defendant, that the officers were in the living area of the home rather than Defendant's bedroom, that they took Defendant outside to the yard once he came into the living area, that he was handcuffed in the front, and that he said he was confused only until he was taken into SA Busby's truck for questioning. Dkt. No. [676] at 11-13. The Magistrate Judge also correctly pointed out that the facts of this case are at least on par with

14

others, including cases involving admonitions to tell the truth, where the Eleventh Circuit found that the statements were voluntarily made. See Dkt. No. [751] at 20-22.

Accordingly, the Court overrules Defendant's objection to the Magistrate Judge's finding that his statements were voluntary and therefore not subject to suppression.

### 3.     Evidence Seized in Home

Defendant argues that the evidence seized from his home should be suppressed because he did not consent to the search of his home. Dkt. No. [766] at 6-13. On this point, the Court agrees with Defendant.

The Government concedes that "the weight of the evidence indicates" that Defendant's phone was not found until what it deems was "the consensual search of the residence." Dkt. No. [716] at 15. However, there is little in the record to suggest that the search was in fact consensual: there was no written or recorded consent; Defendant credibly testified that he did not consent to the search of his home, Dkt. No. [676] at 15; and the Government's witnesses provided conflicting testimony regarding the timing of the alleged consent—SA Busby testified that Defendant gave consent to search within the first five minutes of the interview and gave agents consent to search a phone found in the house toward the end of the half-hour interview, Dkt. No. [672] at 54-56, 79-81, 84-85, while TFO Cadena first testified that he did not remember the circumstances of the request to search the house and later testified that it came after questioning about a phone, Dkt.

15

No. [676] at 29. The Court therefore finds that the Government has not shown that the officers obtained Defendant's consent to search the house and consequently concludes that evidence seized from the house is not admissible based on Defendant's alleged consent to the search.

The Government argues in the alternative that the seizure of Defendant's phone was proper "even if it occurred during the protective sweep." Dkt. No. [716] at 15. This contention relies on the supposition that there is evidence in the record showing that the phone was seized during the protective sweep. Yet the Government has not pointed to any such evidence, and instead, it has conceded that the weight of the evidence indicates that the phone was seized during the search of the residence, after the agents began questioning Defendant. See Dkt. No. [716] at 4, 15-16. In its review of the transcripts from the evidentiary hearing, the Court has found no testimony indicating that the phone was found during the protective sweep; to the contrary, SA Busby's testimony indicates that it was not. See Dkt. No. [672] at 81 (stating her belief that the phone was found toward the end of the agents' interview with Defendant); id. at 84 (stating her belief that no evidentiary items were taken from the residence during the security sweep).

The Government has not presented any other theory or evidence by which the Court might find that law enforcement lawfully reentered the home after removing Defendant from the home and conducting the protective sweep. See generally Dkt. No. [716]. Accordingly, the Court finds no grounds for excepting

16

the fruits of the search, including Defendant's cell phone, from the exclusionary rule. The Court therefore shall sustain Defendant's objections and reject the Magistrate Judge's recommendation as to the motion to suppress the search of Defendant's home and the resulting seizure of his phone, Dkt. No. [751] at 22-28, and instead will grant the motion, Dkt. Nos. [600, 701]. Because the Government has failed to make a showing of legal seizure of the phone, the Court additionally will reject the Magistrate Judge's recommendation to deny the motion to suppress the phone evidence and will instead deny the motion, Dkt. Nos. [602, 704], as moot.

### III.  CONCLUSION

As set forth above, the Magistrate Judge's Order and Report and Recommendation, Dkt. No. [751], is **ADOPTED IN PART and REJECTED IN PART**. Defendant's objection to the Magistrate Judge's denial of his motion for a bill of particulars, Dkt. No. [599], is **OVERRULED**. The Court **OVERRULES** Defendant's objections to the Magistrate Judge's recommendations to deny the motion to suppress evidence from pole-camera surveillance, Dkt. Nos. [623, 702], and the motion to suppress evidence from a tracking device, Dkt. Nos. [603, 703]; **ADOPTS** the Magistrate Judge's recommendations as to those motions as the Order of the Court; and accordingly **DENIES** the motions. The Court **SUSTAINS** Defendant's objections to the Magistrate Judge's recommendation to deny the motions to suppress evidence from the search of his home, Dkt. Nos. [600, 701], and to suppress evidence seized from a cell phone

taken during the search of his home, Dkt. Nos. [602, 704]; **REJECTS** those portions of the Report and Recommendation; and consequently **GRANTS** the motion to suppress evidence from the search of Defendant's home, Dkt. Nos. [600, 701], and **DENIES AS MOOT** the motion to suppress evidence seized from a cell phone taken during the search of Defendant's home, Dkt. Nos. [602, 704].

**IT IS SO ORDERED** 26th day of April, 2023.

_____
**Leigh Martin May
United States District Judge**